IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4037 |
| WE INFORM, LLC, et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4041 |
| INFOMATICS, LLC, et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4045 |
| THE PEOPLE SEARCHERS, LLC, et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4075 |
| DM GROUP, INC., et al. | : | |

---

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4080 |
| DELUXE CORPORATION, et al. | : | |

---

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :           NO. 24-4096
DELVEPOINT, LLC, et al.         :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :           NO. 24-4098
QUANTARIUM ALLIANCE, LLC,       :
et al.                          :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :           NO. 24-4103
YARDI SYSTEMS, INC., et al.     :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :           NO. 24-4141
DIGITAL SAFETY PRODUCTS,        :
LLC, et al.                     :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :           NO. 24-4143
CIVIL DATA RESEARCH             :
```
_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4160 |
| SCALABLE COMMERCE, LLC,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4174 |
| LABELS & LISTS, INC | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4176 |
| INNOVIS DATA SOLUTIONS INC.,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4178 |
| ACCURATE APPEND, INC.,<br>et al. | : | |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4256 |
| ZILLOW, INC., et al. | : | |

```
ATLAS DATA PRIVACY              :         CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :         NO. 24-4261
EQUIMINE, INC., et al.          :
```
_____

```
ATLAS DATA PRIVACY              :         CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :         NO. 24-4292
MELISSA DATA CORP., et al.      :
```
_____

```
 ATLAS DATA PRIVACY             :         CIVIL ACTION
 CORPORATION, et al.            :
                                :
        v.                      :
                                :         NO. 24-4324
 RESTORATION OF AMERICA,        :
 et al.                         :
```
_____

```
ATLAS DATA PRIVACY              :         CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :         NO. 24-4345
i360, LLC, et al.               :
```
_____

```
ATLAS DATA PRIVACY              :         CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :         NO. 24-4380
GOHUNT, LLC, et al.             :
```
_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4383 |
| ACCUZIP, INC., et al. | : | |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4385 |
| SYNAPTIX TECHNOLOGY, LLC, et al. | : | |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4389 |
| JOY ROCKWELL ENTERPRISES, INC., et al. | : | |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4390 |
| FORTNOFF FINANCIAL, LLC, et al. | : | |

_____

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-4392 |
| MYHERITAGE, LTD., et al. | : | |

_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :           NO. 24-4434
E-MERGES.COM, INC.              :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :           NO. 24-4609
NUWBER, INC., et al.            :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :           NO. 24-4664
ROCKETREACH LLC, et al.         :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :           NO. 24-4949
BELLES CAMP COMMUNICATIONS,     :
INC., et al.                    :
```
_____

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :           NO. 24-5600
PROPERTYRADAR, INC., ET AL.     :
```
_____

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-5656
THE ALESCO GROUP, L.L.C.        :
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-5658
SEARCHBUG, INC.                 :
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-5775
AMERILIST, INC., et al.         :
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-7324
US DATA CORPORATION, et al.     :
```

```
ATLAS DATA PRIVACY              :              CIVIL ACTION
CORPORATION, et al.             :
                                :
        v.                      :
                                :              NO. 24-8075
SMARTY, LLC, et al.             :
```

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
        v.                    :
                              :          NO. 24-8451
COMPACT INFORMATION SYSTEMS,  :
LLC, et al.                   :
```

```
ATLAS DATA PRIVACY            :          CIVIL ACTION
CORPORATION, et al.           :
                              :
        v.                    :
                              :          NO. 24-10600
DARKOWL, LLC, et al.          :
```

MEMORANDUM

Bartle, J.                                    November 26, 2024

The plaintiffs in these 37 civil actions allege violations of a New Jersey statute known as Daniel's Law.[1] Before the court is the consolidated motion of defendants to dismiss on the ground that Daniel's Law is unconstitutional on its face.  Defendants assert that it abridges their freedom of speech.

Daniel's Law provides that judges, prosecutors and other law enforcement officers as well as their immediate family members ("covered persons") may request in writing that any person, business, or association not disclose or make available

---

1.   Daniel's Law as amended is codified as follows: N.J.S.A. 2C:20-31.1, 17:46B-1.1, 19:31-18:1, 46:26A-12, 47:1-17, 47:1A-1.1, 47:1A-5, 47:1B-1, 47:1B-2, 47:1B-3, 47:1B-4, 56:8-166.1, 56:8-166.3.

their home addresses and unpublished telephone numbers.  It creates a civil remedy for actual and punitive damages and injunctive relief for non-compliance not only for covered persons but also for their assignees.  There are also criminal penalties.

Plaintiffs are Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan.  The named individual plaintiffs, who are police officers or correctional officers, allege they are "covered persons" under Daniel's Law.  Atlas is the assignee of approximately 19,000 unnamed covered persons who used its website to notify defendants to cease disclosure of their personal contact information.  The defendants include real estate businesses, direct-mailing and marketing companies, data brokers, and other entities that provide fundraising support to charities and other non-profits.[2]  According to plaintiffs, defendants are entities which continued to make available their home address and unlisted phone numbers in violation of Daniel's Law.  There is no allegation that this information was untruthful or that defendants obtained it illegally.

---

2.    There are also named as defendants ten "Richard Roes" and ten "ABC Companies" in each complaint.

I.

In or about February 2024 and thereafter, plaintiffs filed these actions in the Superior Court in a number of different counties in New Jersey.  Defendants, pursuant to 28 U.S.C. §§ 1441 and 1446, removed the actions to the United States District Court for the District of New Jersey on the ground that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a).  The individual plaintiffs are citizens of New Jersey while Atlas, a corporation, is a citizen of both Delaware and New Jersey.  All defendants are citizens of states other than New Jersey and Delaware.  There is no dispute that the requisite amounts in controversy have been satisfied.

All of the judges of the District of New Jersey recused themselves.  On April 2, 2024, the Chief Judge of the United States Court of Appeals for the Third Circuit reassigned these and all related actions to the undersigned pursuant to 28 U.S.C. § 292(b).  E.g., Order, Atlas Data Privacy Corp. v. Blackbaud, Inc., Civil Action No. 24-3993 (D.N.J. April 2, 2024) (Doc. No. 13).

This court held several status conferences in these and other reassigned Daniel's Law cases at which defendants made it known that they intended to challenge Daniel's Law on various

grounds.[3]  Some also maintained that subject matter jurisdiction was absent.  The court, in an effort to proceed in an orderly fashion, stayed all these actions except for motions to remand for lack of subject matter jurisdiction and motions to dismiss on the ground of facial unconstitutionality.  The court thereafter remanded 39 Daniel's Law cases for lack of diversity jurisdiction.  It denied remand in one case, Atlas Data Privacy Corp. v. MyHeritage Ltd., Civil Action No. 24-4392, because of fraudulent joinder of a non-diverse defendant.  Memorandum at 31, Atlas Data Privacy Corp. v. MyHeritage Ltd., Civil Action No. 24-4392 (D.N.J. Nov. 20, 2024) (Doc. No. 52).[4]  The consolidated motion being decided here relates to the actions for which no challenge to subject matter jurisdiction is pending.

The court gave notice of these actions to the Attorney General of New Jersey, who intervened.  See 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(b).  With the court's permission, the

---

3.    On March 25, 2024, even before the status conferences, Delvepoint, LLC, the defendant in one of the cases, had moved to dismiss.  Atlas Data Privacy Corp. v. Delvepoint, LLC, Civil Action No. 24-4096 (Doc. No. 3).

4.    In Atlas Data Privacy Corp. v. Thomson Reuters Corp., Civil Action No. 24-4269 (D.N.J. filed Mar. 27, 2024), the court granted remand on the ground that non-diverse defendants Thomson Reuters Holdings and Thomson Reuters Applications had not proven fraudulent joinder.  The court has granted these defendants leave to file a motion for reconsideration on or before December 2, 2024.

National Association of Assistant United States Attorneys, the New Jersey State Policemen's Benevolent Association, Inc., and the National Association of Police Organizations filed an amicus brief. E.g., Brief for the Nat'l Ass'n of Assistant U.S. Att'ys et al. as Amici Curiae, Atlas Data Privacy Corp. v. Lightbox Parent, L.P., Civil Action No. 24-4105 (D.N.J. Aug. 1, 2024) (Doc. No. 47-1).

## II.

The complaints recite and the court at the outset takes judicial notice of the tragic circumstances that led to the passage of Daniel's Law. In July 2020, a disgruntled lawyer who had litigated before United States District Judge Esther Salas sought to assassinate her at her home in New Jersey. Esther Salas, My Son Was Killed Because I'm a Federal Judge, N.Y. Times (Dec. 8, 2020), https://www.nytimes.com/2020/12/08/opinion/esther-salas-murder-federal-judges.html. After finding her home address on the Internet, the lawyer showed up on a Sunday evening armed and dressed as a delivery driver. Id. Daniel Anderl, Judge Salas's twenty-year-old son, answered the door and was fatally shot by the lawyer. Id. Her husband and Daniel's father was severely wounded. Id. The lawyer then fled. In response to these crimes, the New Jersey Legislature passed Daniel's Law in November 2020 and has amended it thereafter.

Daniel's Law, as declared by the New Jersey
Legislature, was enacted to serve the following goals:

> This act shall be liberally
> construed in order to accomplish its purpose
> and the public policy of this State, which
> is to enhance the safety and security of
> certain public officials in the justice
> system, including judicial officers, law
> enforcement officers, child protective
> investigators[,] . . . and prosecutors, who
> serve or have served the people of New
> Jersey, and the immediate family members of
> these individuals, to foster the ability of
> these public servants who perform critical
> roles in the justice system to carry out
> their official duties without fear of
> personal reprisal from affected individuals
> related to the performance of their public
> functions.

N.J.S.A. 56:8-166.3 (emphasis added).

The law prohibits any entity when requested from
thereafter disclosing the home address and unpublished telephone
number of a covered person:

> Upon notification pursuant to
> paragraph (2) of this subsection, and not
> later than 10 business days following
> receipt thereof, a person, business, or
> association shall not disclose or re-
> disclose on the Internet or otherwise make
> available, the home address or unpublished
> home telephone number of any covered
> person . . . .

Id. at 56:8-166.1(a)(1).  The notice must be in writing and
state that the person seeking non-disclosure is a person
authorized to do so.  Id. at 56.8-166.1(2).  A "covered person"
is defined as "an active, formerly active, or retired judicial

-13-

officer, law enforcement officer, or child protective investigator . . ., or prosecutor and any immediate family member residing in the same household as such [individual]." Id. at 56:8-166.1(d).

"Disclose" means "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer" and includes "making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."  Id.

The prohibition on disclosure is triggered, as noted above, when a covered person transmits to an entity written notice requesting non-disclosure.  The entity must comply with the request no later than 10 business days after receipt.  Id. If it does not, it is "liable to the covered person or the covered person's assignee, who may bring a civil action in the Superior Court."  Id. at 56:8-166.1(b) (emphasis added).  Under Daniel's Law, an "[a]ssignee' means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for violation of subsection a. of this section."[5]  Id. at 56:8-166.1(d).

_____

5.    Covered persons may also request through the New Jersey Office of Information Privacy that public agencies redact or cease to disclose home addresses.  Public agencies shall redact such information no later than 30 days after the request has

Non-compliance carries a monetary penalty and the award of appropriate equitable relief.  The court shall award:

> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
> (2) punitive damages upon proof of willful or reckless disregard of the law;
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
> (4) any other preliminary and equitable relief as the court determines to be appropriate.

Id. at 56:8-166.1(c).  In addition, Daniel's Law provides for criminal liability.[6]

---

been approved by the Office of Information Privacy.  N.J.S.A. 47:1B-2.

6.    Daniel's Law provides:

> Upon notification pursuant to subsection c. of this section, and not later than 10 business days after receipt thereof, a person shall not knowingly, with purpose to expose another to harassment or risk of harm to life or property, or in reckless disregard of the probability of such exposure, post, repost, publish, or republish on the Internet, or otherwise make available, the home address or unpublished home telephone number of any covered person, except in compliance with any court order, law enforcement investigation, or request by a government agency or person duly acting on behalf of the agency.

N.J.S.A. 2C:20-31.1(b).

It also provides that: "[a] reckless violation of subsection b. is a crime of the fourth degree.  A purposeful

In limited circumstances, Daniel's Law exempts certain governmental and other entities from the prohibition against the disclosure of a home address—but not the home telephone number—of a covered person.  Id. at 47:1B-3.  For example, a county recording officer is not required to redact the home address of a covered person from property records which are publicly available.  Id. at 47:1B-3(a)(2).  Similarly, a government agency may disclose the home address of a covered person to a third-party contractor but only for the purposes of carrying out its contract with the agency.  Id. at 47:1B-3(a)(5).

                                III.

Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move to dismiss the plaintiffs' complaints on the ground that Daniel's Law is unconstitutional on its face.  As stated in Neitzke v. Williams, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  490 U.S. 319, 326 (1989).  The court must accept as true all well-pleaded facts in the complaints. Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 195 (2024). The court may also consider exhibits attached to the complaints and take judicial notice of matters of public record.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

---

violation of subsection b. is a crime of the third degree."  Id. at 2C:20-31.1(d).

1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

The eight individual plaintiffs, two of whom are correctional officers and six of whom are police officers, allege that they were threatened with violence as a result of his or her public service.[7] For present purposes, these allegations must be accepted as true. After Daniel's Law was

---

7. Officer Jane Doe-1 is a law enforcement officer who was surveilled along with her young child at her home by a major criminal organization that she was investigating.

Officer Jane Doe-2 is a correctional officer who discovered a note left behind by an inmate in the correctional facility's law library that contained her full name and home address.

Detective Edwin Maldonado, a law enforcement officer, moved after receiving death threats from the criminal organization Mara Salvatrucha-13 ("MS-13") at his home. When MS-13 could not locate him at his new address, they targeted his mother and attempted to burn down her building.

Sergeant Scott Maloney and Officer Justyna Maloney are both law enforcement officers who received death threats and demands for ransom by phone after Officer Maloney's encounter with a civilian was filmed and posted online. Two individuals were arrested after they were spotted by a neighbor circling the Maloneys' house, armed and wearing ski masks.

Detective Patrick Colligan, during his 32 years in law enforcement, has received numerous threats targeted at him and his family. He has a surveillance camera and alarm system and trained his family how to respond to an attack on his home.

Officer Peter Andreyev, a law enforcement officer, has received numerous death threats and threats of violence targeted at himself and his family members.

Officer William Sullivan, a correctional officer, has likewise received death threats and threats of violence directed at himself and his family.

enacted, each individual plaintiff sent defendants written notices requesting that defendants cease disclosing or re-disclosing his or her home address and unlisted telephone number.

Atlas owns and operates an online platform for covered persons to identify data brokers and send written notices.  To use the service, covered persons must sign up for an account and set up an email address with Atlas.  They can then use the platform to identify which entities are disclosing their personal information and send written notices to those entities using their Atlas email account.  Approximately 19,000 covered persons signed up with Atlas and used its platform to send written notices to defendants.

In exchange for using the platform, these covered persons agreed to Atlas's terms of service.  Those terms of service state that, upon receipt of written notice from Atlas, a covered person using Atlas's platform is "deemed . . . to have irrevocably assigned to [Atlas] all of [his or her] rights to bring a claim (and seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of [his or her] rights under" Daniel's Law.  The terms of service further provide that "[Atlas] will have the exclusive right to bring such civil enforcement actions" after assignments take place. At that point, these covered persons have assigned absolutely

-18-

their claims under Daniel's Law to Atlas.  Under their agreement with Atlas, Atlas will remit 65% of any recovery to the covered persons and retain 35% for itself.

Atlas and the individual plaintiffs claim that defendants never responded to the written notices and never redacted the personal information of the individual plaintiffs or of the 19,000 unnamed covered persons who have assigned their claims to Atlas.

IV.

The First Amendment to the Constitution, on which defendants rely, states in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."  This constitutional prohibition also applies to the laws of the states through the due process clause of the Fourteenth Amendment.  Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 808 (2019).  To succeed on a facial challenge in a First Amendment case, the party making the challenge must establish that "the law's unconstitutional applications substantially outweigh its constitutional ones." Moody v. NetChoice, LLC, 144 S. Ct. 2383, 2397 (2024).

The court will quickly dispose of the plaintiffs' first argument that Daniel's Law is regulating only data and therefore is not restricting speech.  If plaintiffs are correct, there is no First Amendment issue to be resolved.  The Supreme

-19-

Court has described speech as expressive activity intended and reasonably understood as communicative. <u>Clark v. Cmty. for Creative Non-Violence</u>, 468 U.S. 288, 294 (1984). If, for example, defendants simply published statistics compiled by the Census Bureau, the information would probably be characterized as data. That is not what is happening here. Instead, the home addresses and unlisted phone numbers being disseminated are tied to specific persons. In other words, the defendants are telling the world that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000.

If Daniel's Law limits speech, plaintiffs assert that the law simply restricts commercial speech which is subject to a lesser standard of judicial scrutiny and is afforded less protection under the First Amendment than other forms of speech. <u>Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.</u>, 447 U.S. 557, 562-63 (1980). The Supreme Court has defined commercial speech as "expression related <u>solely</u> to the economic interests of the speaker and its audience," that is expression which serves the economic interests of both the speaker and consumer. <u>Id.</u> at 561 (emphasis added). The Court has also described commercial speech as "speech that does no more than propose a commercial transaction." <u>United States v. United Foods, Inc.</u>, 533 U.S. 405, 409 (2001). Our Court of Appeals has observed that commercial speech is generally found in

-20-

advertising for the sale of goods and services.  U.S.
Healthcare, Inc. v. Blue Cross of Greater Phila., 898 F.2d 914,
933 (3d Cir. 1990).

Commercial speech may be restricted when the message
is either inaccurate or misleading or when the message promotes
unlawful activity.  Cent. Hudson, 447 U.S. at 566.  Otherwise it
may be limited only where the government's interest in
regulating such speech is substantial, the government's
regulation directly advances that interest, and the regulation
is no more extensive than necessary.  Id. at 571-72.  This level
of review of commercial speech is generally called intermediate
scrutiny.  Greater Phila. Chamber of Com. v. City of Phila., 949
F.3d 116, 137-38 (3d Cir. 2020).

While Daniel's Law includes to "sell" and to
"advertise" within the definition of "disclose," they are merely
two verbs among many that are enumerated.  The definition also
encompasses to "give, . . . post, . . . disseminate, [and]
exhibit."  In addition, "disclose" in Daniel's Law means to make
"available or viewable within a searchable list or database."
N.J.S.A. 56:8-166.1(d).  The Supreme Court has explained that
commercial speech must relate solely to the economic interests
of its speaker and its audience.  Daniel's Law allows covered
persons to prevent the dissemination of certain personal
information regardless of the means or reasons for the

dissemination.  Its stated purpose in limiting expression is to enhance the safety and security of judges, prosecutors, and law enforcement officers and to foster their ability to carry out their duties without fear of reprisal.  The expression in issue here is not about the economic interests of the plaintiffs, the defendants, or the public, let alone solely about their economic interests.  The speech certainly does not propose a commercial transaction.  Daniel's Law, in this court's view, does not concern commercial speech.

The court must decide whether Daniel's Law is content-based or content-neutral on its face since the level of judicial scrutiny will depend on this distinction.  See Reed v. Town of Gilbert, 576 U.S. 155, 166 (2015).  The Supreme Court has explained that "government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  Id. at 163. Speech is content-based when it is regulated by subject matter, when there are restrictions on a particular viewpoint, or when there is a prohibition of a particular topic.  Id. at 169.  In contrast, a law is content-neutral when it is "justified without reference to the content of the regulated speech."  Bartnicki v. Vopper, 532 U.S. 514, 526 (2001) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

Daniel's Law authorizes covered persons to request non-disclosure of their home addresses and unpublished phone numbers. It clearly regulates particular subject matter. Accordingly, Daniel's Law is content-based.

The Supreme Court's more recent decision in City of Austin v. Reagan Nat'l Advertising of Austin, LLC, 596 U.S. 61 (2022), cited by plaintiffs, does not mandate a contrary result. There, the Court upheld the constitutionality of a city ordinance regulating on-premises signs differently than off-premises signs. The ordinance dealt with such matters as their size, illumination and location. The Court ruled that the ordinance was "agnostic as to content" and thus was content neutral so as to be subject to intermediate and not strict scrutiny. The facts in City of Austin contrast markedly from the situation here. Id. at 69-71.

As Daniel's Law limits content-based speech, the defendants maintain that it is subject to strict scrutiny. Under that standard, the law would be "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." Reed, 576 U.S. at 163.

Plaintiffs urge that a somewhat different analysis should be applied in deciding the constitutionality of Daniel's Law because Daniel's Law is a privacy statute. Plaintiffs

-23-

describe it as creating a right of action for judges, prosecutors and other law enforcement officers to redress the invasion of their privacy.  It provides that they may notify entities, large and small, to refrain from disclosing their home addresses and unlisted phone numbers upon 10 days written notice.  If an entity fails to adhere to the request, a covered person or his or her assignee may sue for actual damages but not less than $1,000 in liquidated damages as well as for injunctive relief.  Plaintiffs cite Daniel's Law as part of the long history of common law torts and statutes whose purpose is to afford redress to persons whose privacy is invaded from disclosure of personal information, albeit truthful, that is not of public interest.  See, e.g., Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890); William L. Prosser, Privacy, 48 Cal. L. Rev. 383 (1960).

Our Court of Appeals recognized in 2000 that a significant range of people including public officials, performers and ordinary folks regard home addresses as private information.  The court understood this reality even while referencing the wide availability of telephone directories at the time.  Our Court of Appeals also wrote that the Freedom of Information Act exempts home addresses from disclosure as it would be a "clearly unwarranted invasion of privacy."  Paul P. v. Farmer, 227 F.3d 98, 101 (3d Cir. 2000); 5 U.S.C.

-24-

§ 552(b)(6).  If anything, the sentiment that such information is private has intensified as most people today have unlisted numbers and the presence of telephone directories that include addresses is virtually a thing of the past.

The defendants counter that Daniel's Law is not a privacy law but rather a law to provide for the safety and security of covered persons.  The court rejects this narrow reading.  Privacy has generally been defined as the right to be let alone.  Warren & Brandeis, The Right to Privacy, supra, at 195 (quoting Cooley on Torts 29 (2d ed. 1888)).  The New Jersey Legislature has concluded that covered persons should have the right to be let alone insofar as their home addresses and unpublished phone numbers are concerned.  The reason the Legislature has protected this information is not only to enhance the safety and security of covered persons but also to safeguard them from the fear of reprisal for doing their jobs.  Daniel's Law is analogous to the long-standing common law tort for invasion of privacy for disclosure of the intimate details of a person's private life.  There the law allows for damages for disclosure of such information in order to compensate for causing embarrassment and humiliation.  Romaine v. Kallinger, 537 A. 2d 284, 292 (N.J. 1988).  Here, Daniel's Law furnishes a remedy for disclosing certain private information and exposing

covered persons to fear of reprisal and to personal danger. Whatever else it may be, Daniel's Law is a privacy statute.

The Supreme Court has recognized the tension that exists between privacy law and the right of freedom of speech and the press under the First Amendment.  It has decided a number of cases where it has had to resolve this tension.  The cases that have been cited focus on state statutes which block the dissemination of the identity of rape victims and of juvenile offenders even when the information was legally obtained.  Some involved criminal statutes while others concerned statutes providing for civil redress for persons whose privacy has been invaded.  See, e.g., The Florida Star v. B.J.F., 491 U.S. 524 (1989); Smith v. Daily Mail Publ'g Co., 443 U.S. 97 (1979); Oklahoma Publ'g Co. v. Oklahoma Cnty Dist. Ct., 430 U.S. 308 (1977); Cox Broad. Corp. v. Cohn, 420 U.S. 469 (1975).  In all of these cases the Supreme Court ruled that the First Amendment carried the day over the right to privacy.  See also Bowley v. City of Uniontown Police Dept., 404 F.3d 783 (3d Cir. 2005).  Nonetheless, the Court has continually stressed that it was not announcing a blanket rule that free speech must always prevail and that publication of truthful and lawfully obtained information can never be blocked or punished.  The Florida Star, 491 U.S. at 532.  It has emphasized that each case

-26-

must be decided on its particular facts.  Id. at 533.  It

reiterated in The Florida Star:

> Our holding today is limited.  We do not
> hold that truthful publication is
> automatically constitutionally protected, or
> that there is no zone of personal privacy
> within which the State may protect the
> individual from intrusion by the press, or
> even that a State may never punish
> publication of the name of a victim of a
> sexual offense.

Id. at 541.

As noted above, defendants assert this court should

apply strict scrutiny to Daniel's Law, a standard which the

Supreme Court has applied in Reed and other cases.  The words

"strict scrutiny" and the strict scrutiny standard of review,

however, do not appear in the above cited Supreme Court

decisions involving the right to privacy.  Instead, the Supreme

Court has outlined three specific factors that a court must

consider in balancing the right of privacy against the right of

free speech.  In The Florida Star, which involved a civil

statute imposing damages for the publication of the name of a

rape victim, the Court established that the first inquiry is

whether the information is lawfully obtained and is of public

significance.[8]  Id. at 536.  A court must then determine whether

---

8.   In these pending actions, it is not contested that
defendants obtained the covered persons' home addresses and
unlisted phone numbers lawfully.  Accordingly, the court need
not consider this issue.

the law in question serves "a need to further a state interest of the highest order." Id. at 537 (quoting Daily Mail, 443 U.S. at 103). Finally, the court must decide whether the statute serves "the significant interests" which the state purports to advance and is not underinclusive. Id. at 540. Since Daniel's Law is a privacy law, this is the proper analysis to be applied in the pending cases.

First, the court concludes that the home addresses and unpublished phone numbers are not matters of public significance. The narrow limitation under Daniel's Law constitutes but a tiny part of the life story of covered persons and is not information that is necessary or pertinent for public oversight. Daniel's Law does not inhibit in any meaningful way the public's knowledge of public officials or its ability to hold them accountable for their performance and behavior. In contrast to the limited scope of Daniel's Law, the restricted speech in the cited Supreme Court cases concerned criminal activity and its prosecution. The public clearly has a vital interest in such information while the same cannot be said of the speech governed by Daniel's Law.

The defendants raise the specter of a number of hypotheticals where the home address or the unlisted phone number of a covered person may be newsworthy and thus of public significance. If any of these hypotheticals ever comes to pass,

the defendants' remedy is to challenge Daniel's law as unconstitutional as applied.  See United States v. Hansen, 599 U.S. 762, 784-85 (2023).

Second, the court must determine whether Daniel's Law serves a need to further a state interest of the highest order. The New Jersey Legislature declared in Daniel's Law itself that its purpose was to enhance the safety and security of judges, prosecutors, and other law enforcement officers so that they are able to carry out their official duties without fear of personal reprisal.  The court need not tarry by reciting in detail the support for the well-known fact, amply documented by the record here, that in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations.  Some of these threats and assassinations, as alleged in the complaints and of which the court takes judicial notice, have been facilitated by malefactors obtaining the home address or unlisted phone number of their targets.  Indeed, the immediate motivation for the passage of Daniel's Law was the tragedy that occurred when an individual with grievances against Judge Salas obtained her home address from the Internet, proceeded to her home with the intent to kill her, and killed her son and wounded her husband.  None of the parties appears to contest that Daniel's Law, in aiming to protect covered persons

-29-

from fear, threats, injury and death, serves a need to further a
state interest of the highest order.

Finally, the defendants assert that Daniel's Law fails
because it is underinclusive.  By invoking underinclusiveness,
they mean that New Jersey is not really pursuing or the law is
not advancing its compelling state interest in protecting
judges, prosecutors, and other law enforcement officers from
threats and assassinations.  See Williams-Yulee v. Florida Bar,
575 U.S. 433, 448-49 (2015).  Defendants reference that Daniel's
Law has a number of exemptions allowing for disclosure of home
addresses.  The law, for example, does not block access to home
addresses which appear on property records or on voter
registration lists.  The short answer is that this type of
information is generally more difficult to extract from public
records than information found on the Internet.  The Supreme
Court has emphasized that the right of privacy in compiled or
computerized information does not evaporate simply because the
information may be found in other places.  It explained that
there is "a vast difference between public records that might be
found after a diligent search of courthouse files, county
archives, and local police stations throughout the country and a
computerized summary located in a single clearinghouse of
information."  U.S. Dep't of Just. v. Reps. Comm. for Freedom of
the Press, 489 U.S. 749, 764 (1989).  The fact that the home

-30-

addresses and unlisted phone numbers of individual covered

persons may be discovered elsewhere in various scattered

locations does not make Daniel's Law underinclusive.

      The defendants also fault the law because it treats

private and business entities more strictly than public

agencies.  The law does not limit the use of information by

governmental agencies in the same way it does private entities.

In some instances, the availability of home addresses and even

phone numbers is necessary for the government and society to

function.  It also allows the State more time to remove

information from public access.  This is understandable

considering the numerous state agencies, counties, and

municipalities which may hold such information.  This reality

does not make Daniel's Law underinclusive.  See Fraternal Order

of Police v. City of Phila., 812 F.2d 105, 118 (3d Cir. 1987).

      The distinctions made in Daniel's Law are sound—not

arbitrary or discriminatory.  All non-governmental entities are

treated the same.  The New Jersey Legislature has had to grapple

with a very complex and important issue in trying to protect

covered persons who seek to uphold the rule of law and who by

the very nature of their jobs are in the public eye.  The

Supreme Court has dictated that each case must be decided on its

own facts.  It has never ruled on a case like the ones now

before this court.  The law is not unconstitutional simply

because the Legislature may not have come up with a complete answer to the problem of the safety, security, and fear of reprisal of covered persons.  It acted in response to the attempted assassination of Judge Salas, the murder of her son, and the wounding of her husband, all of which resulted after an assailant obtained her home address through the Internet.  The special although not total focus of Daniel's Law is to prevent the use of the Internet as the source of intelligence to facilitate other such tragedies.  The Legislature cannot be faulted for its approach based on a very real set of facts, which unfortunately are not unique.  The perfect is not the enemy of the good.

The Supreme Court in <u>Williams-Yulee</u>, <u>supra</u>, did recognize that underinclusiveness can be a red flag in determining whether a law limiting speech advances a state interest.  In that case, the Court upheld against an underinclusive First Amendment challenge a regulation of the Florida Bar prohibiting a judicial candidate from personally soliciting money for her election.  <u>Williams-Yulee</u>, 575 U.S. at 455-56.  This narrowly drawn regulation did not prevent the candidate from establishing a committee of lawyers to raise money for her campaign and did not ban her from sending thank-you notes to her contributors.  Nor did it require an elected

judge to recuse in any case in which a lawyer-contributor
appeared.  The Court observed:

> A State need not address all aspects of a
> problem in one fell swoop; policymakers may
> focus on their most pressing concerns.  We
> have accordingly upheld laws – even under
> strict scrutiny – that conceivably could
> have restricted even greater amounts of
> speech in service of their stated interests.

Id. at 449.  The present situation is no different.  Daniel's
Law is not underinclusive because it may not address "all
aspects of the problem in one fell swoop."  Rather, it does
materially promote the state's interest of the highest order in
protecting judges, prosecutors and other law enforcement
officers from harm.

The defendants challenge other aspects of Daniel's
Law.  They criticize the law's sweep in not limiting notice of
non-disclosure to situations where there are "true threats."  By
then, any notice not to disclose a home address and unlisted
telephone number is probably too late.  That would be analogous
to closing the barn door after the horse has left.  The
Legislature was not unreasonable in determining that the law to
be effective must allow covered persons to request non-
disclosure preemptively.  Defendants also argue that the
definition of "disclose" is too broad.  The law reads as it does
to advance the state's significant interest in protecting the

lives and well-being of covered persons.  This argument is not
persuasive.

Defendants further suggest that a protective order
would be a sufficient remedy.  It is questionable that the entry
of a protective order would be effective after the information
is released.  The court disagrees that this legislative scheme
is invalid.

Defendants take issue with the assignment provision of
Daniel's Law.  The Legislature made a rational decision in
allowing covered persons to assign their claims.  In its view,
it will make the enforcement more effective.  It is not hard to
imagine that many covered persons may find it too difficult, too
cumbersome, or too expensive to hire counsel or to proceed
against dozens of defendants on their own without an assignee.

The court has considered the various other challenges
defendants raise to the form of the law.  They are all without
merit.  Defendants are simply disagreeing with the Legislature's
policy choices.  Reasonable people of course may have different
views about those choices.  Simply because the law could have
been written differently does not make it unconstitutional.

V.

The defendants in addition assert that Daniel's Law is
unconstitutional on its face because it is a strict liability
statute, that is because it provides for actual or liquidated

-34-

damages for non-compliance without regard to fault.  It is the
fallback position of the defendants that plaintiffs must
establish that the defendants had the specific intent to violate
the requirements of Daniel's Law.  Plaintiffs and the New Jersey
Attorney General counter that the standard of liability is
negligence.  They take the position that plaintiffs must prove
that defendants acted unreasonably in failing to take down the
requested home addresses and unlisted phone numbers.

        Liability without fault is known both to the civil and
criminal law.  See, e.g., Smith v. California, 361 U.S. 147, 150
(1989).  The Supreme Court, however, has carved out an exception
against strict liability where a law restricts the freedom of
speech.  The Court has held unconstitutional an ordinance which
provided for strict criminal liability against booksellers who
had an obscene or indecent writing or book in their places of
business.  Id. at 155.  Likewise, the Court in The Florida Star
ruled invalid under the First Amendment a civil privacy statute
which provided for a negligence per se standard of culpability.
491 U.S. at 539-40, 541 n.9.

        Daniel's Law provides a covered person or the person's
assignee with a civil remedy.  Relief is only available after a
covered person takes the initiative to transmit a written notice
of non-disclosure to an entity.  The covered person must also
state he or she is a person authorized to request non-

-35-

disclosure.  The entity has 10 business days thereafter not to disclose or not to make available the home address and unpublished phone telephone number of the covered person. N.J.S.A. 2C:20-21.1(6).  For failure to comply, the court shall award to a covered person or his or her assignee: (1) actual damages but not less than liquidated damages at the rate of $1,000 for each violation; (2) punitive damages upon proof of willful or reckless disregard of the law; and (3) preliminary and equitable relief.  N.J.S.A. 56:8-166.1(c).

The standard for determining culpability under Daniel's Law for actual or liquidated damages is of course a matter of state law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  To the extent that the state law itself does not on its face set forth the standard, this court must look to its construction by the New Jersey Supreme Court.  If that court has not had occasion to address the issue, this court must predict how it would rule.  Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993).

In deciding what standard applies, the court must keep in mind relevant principles of statutory construction applied in New Jersey.  To this end, statutes must be construed to conform to the Constitution if the statute is reasonably susceptible to such a construction.  State v. Carter, 255 A.3d 1139, 1153 (N.J. 2021); State v. Burkert, 174 A.3d 987, 998 (N.J. 2017).  Courts

-36-

must also avoid an interpretation of a statute which leads to absurd results.  N.J. Republican State Comm. v. Murphy, 236 A.3d 898, 908 (N.J. 2020).

Daniel's Law does not state explicitly what standard of liability applies for actual or liquidated damages.  However, it does require that the offending conduct amount to "willful or reckless disregard of the law" in order for the award of punitive damages.  It would be nonsensical and effect an absurd result for the court to read into Daniel's Law a standard of civil liability for actual or liquidated damages which requires the same degree of culpability as or a higher degree of culpability than the standard of civil liability enunciated in the statute for punitive damages.  Thus, liability for actual or liquidated damages does not demand a showing of specific intent or of willful or reckless conduct when recovery of punitive damages may occur only with proof of willful or reckless conduct.

That leaves the question whether the standard for actual and liquidated damages is either liability without fault or negligence.  If Daniel's Law imposes strict liability, it likely runs afoul, as a privacy statute, of the above cited precedents of the United States Supreme Court.  The Court has invalidated strict liability statutes that restrict speech. See, e.g., The Florida Star, 491 U.S. at 541.  Based on New

-37-

Jersey precedents, this court must read the Daniel's Law to
avoid this outcome if it is reasonably susceptible to a
constitutional construction.

       To ascribe a strict liability standard to Daniel's Law
not only would likely render the law unconstitutional but also
could lead to absurd results.  Under such a standard, a noticed
entity would be liable even if it would be unreasonable or
impossible under the circumstances to meet the statutory 10 day
take-down deadline.  Damages under this scenario would have to
be awarded if a hurricane or other natural disaster had taken
place which totally impeded the ability of the noticed entity to
comply in a timely manner.  The same result would be forthcoming
if a fire had destroyed a mailed notice shortly after receipt
and the direction for non-disclosure was lost through no one's
fault before it could be implemented.  The noticed entity would
also be on the hook if its computer system failed after having
received thousands of notices at one time, and it was unable to
take down all the information within the allotted period.

       Daniel's Law is reasonably susceptible to a
construction with a negligence standard of liability.  It is a
privacy statute analogous to the common law tort of invasion of
privacy of the intimate details of a person's life.  The New
Jersey Supreme Court has explained that recovery for this tort
requires proof of "the unreasonable publication of private

-38-

facts." Romaine, 537 A.2d at 291-92. This is a negligence test. There is no reason to think that the New Jersey Supreme Court would not apply the same test here as it did in Romaine.[9] Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available the home addresses and unlisted telephone numbers of covered persons after the statutory deadline had expired.

In summary, the court concludes that Daniel's Law does not mandate a specific intent standard of liability or a standard of liability without fault for actual or liquidated damages. The inclusion of a negligence standard of liability for actual or liquidated damages is a reasonable construction of Daniel's Law, avoids absurd results, is consistent with analogous New Jersey privacy law, and saves the law from constitutional repugnancy.

This court predicts that the Supreme Court of New Jersey would construe Daniel's Law as requiring a covered person or assignee to establish an entity's negligence in order to

---

9.    The New Jersey Model Civil Jury Charges classify the various privacy torts under the rubric "Intentional Torts."  New Jersey Courts, Model Civil Jury Charges System §§ 3.10-3.14, http:www.uscourts.gov/courts/civil/model-civil-jury-charges. This classification does not have the imprimatur of the New Jersey Supreme Court and cannot supersede Romaine.  See Graphnet, Inc. v. Retarus, Inc., 269 A.2d 413, 423 (N.J. 2022).

obtain an award of actual or liquidated damages under N.J.S.A. 56:8-166.1(c)(1).

VI.

The United States Supreme Court has declared that courts should decide cases on their particular facts and circumstances when they involve the interaction of privacy and the right of free speech with the caveat that any privacy statute restricting speech is likely unconstitutional if it imposes liability without fault. At this stage of the pending cases, the court must accept as true the well-pleaded facts and may take judicial notice as appropriate of other facts. After applying the legal analysis enumerated by the Supreme Court to the particular facts and circumstances presented here, Daniel's Law with its negligence standard of liability for actual or liquidated damages is constitutional on its face. The speech that is restricted is not of public significance, the law imposing the restriction serves to further a need of the highest order of the State of New Jersey, and the law serves the significant interest of the State and is not fatally underinclusive.

The consolidated motion of the defendants to dismiss these actions on the ground that Daniel's Law is facially unconstitutional will be denied.

BY THE COURT:


/s/  Harvey Bartle III
                                    J.